UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

**BERNADETTE DICKERSON, ROBERTA ARMIJO, and MARLENE GUTIERREZ,**
individually, and on behalf of others similarly situated,

                Plaintiffs,

vs.

**CARENET – INFOMEDIA GROUP, INC.,
d/b/a CARENET HEALTHCARE
SERVICES**

                Defendant.

Case No. 5:22-cv-00197

---

## <u>COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND</u>

Plaintiff, BERNADETTE DICKERSON, ROBERTA ARMIJO, and MARLENE GUITERREZ, individually and on behalf of all others similarly situated, by and through their attorneys, hereby brings this Collective/Class Action Complaint against Defendant, CARENET – INFOMEDIA GROUP, INC. d/b/a CARENET HEATHCARE SERVICES, and states as follows:

### INTRODUCTION

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, BERNADETTE DICKERSON, ROBERTA ARMIJO, and MARLENE GUITERREZ (hereinafter referred to as "Plaintiffs"), individually and on behalf of all similarly situated persons employed by Defendant, CARENET – INFOMEDIA GROUP, INC. d/b/a CARENET HEALTHCARE SERVICES (hereinafter referred to as "Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the New Mexico Minimum Wage Act, *et. seq*. ("NMMWA"), and common law.

2.     According to its website, Defendant provides virtual healthcare services to 86

million consumers and more than 250 of the nation's premier healthcare organizations.[1]

3.     Plaintiff and similarly situated employees worked as customer service representatives (CSRs) for Defendant in a brick and mortar call center or in an at-home call center setting from their home offices (brick and mortar CSRs worked from home during the pandemic). As CSRs, Plaintiffs provided over-the-phone customer service duties to consumers and patients.

4.     Defendant's website contains the following job description for CSRs:

Schedule appointments for preventative health screenings, COVID-19 vaccinations, or other healthcare appointments.

Make outbound calls and take inbound calls.

Help our members understand their health insurance and how to use it, including helping them change primary care physicians, locating urgent care clinics, and getting prescription authorizations.

Work with healthcare providers to assist with after-hours scheduling of appointments , arranging ground transportation to or from the hospital or pharmacy, or answering inquiries on benefit claims, appeals, and authorizations.

Provide 24/7 Triage Support and assign priority for a Registered Nurse to provide advice.

***Exhibit A***, Exemplary Job Description.

5.     Defendant employs CSRs across the country with the same primary job duties and requires them to work a set schedule.

6.     Defendant systematically fails to compensate the CSRs for the first principal activities of their workday, which results in CSRs not being paid for all their overtime hours, and in non-overtime workweeks, for regular hours, in violation of the FLSA, NMMWA, and common law.

7.     Specifically, Defendant fails to compensate CSRs for the substantial time spent booting up their computer systems and reviewing emails with work instructions, prior to clocking

---

[1] *See*, https://carenethealthcare.com/ (last visited 2.18.22).

in to Defendant's timekeeping system (called Ult-Pro).

8.      Defendant was aware this off-the-clock work was occurring every day, and could have paid CSRs for this time, but did not.

9.      The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry.  One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday."  Fact Sheet #64 at p. 2.

10.      In order to perform her job as a CSR, Plaintiffs were required to start-up and log-in to various computer programs, servers, and applications in order to access the information necessary to perform her job duties.  The start-up/log-in process took substantial time on a daily basis with said time ranging from twelve (12) to fifteen (15) minutes per day.

11.      Plaintiffs and other CSRs were provided with a one thirty (30) minute lunch during each shift.  However, many of the programs utilized by CSRs had an auto-log out feature, which logged the CSRs out if they were idle for more than a few minutes.  For example, the CSRs were kicked out of the VPN and out of the timekeeping system if they were idle for more than a few minutes. Additionally, CSRs were required to log out of other programs for security reasons. Consequently, Plaintiffs and other CSRs were forced to go through some, or all, of the start-up/log-in process when returning from lunch.  This generally resulted in an additional three (3) to four (4) minutes of off-the-clock work every day, but could take even longer if they had to go through the complete log-in process.

12.      Finally, at the end of the day, CSRs are forced to shut-down/log-out of various

computer programs and software after they clock out for the day. This results in an additional one (1) to two (2) minutes of off the clock work every day.

13.    As a result, Plaintiffs and other CSRs were unlawfully deprived of approximately sixteen (16) to twenty two (22) minutes of compensation for the off the clock work that occurred every day.

14.    Defendant knew, or could have easily determined, how long it took for all of the above off the clock work, and could have properly compensated Plaintiffs and the other CSRs for the work they performed off the clock, but did not.

15.    Plaintiff brings this action on behalf of herself and all other similarly situated hourly CSRs of Defendant to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

16.    This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

17.    Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

18.    Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's Representatives engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

19.    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they arise under the same facts as their federal claims.

20.    This court has personal jurisdiction over Defendant because it regularly and systematically conducts business within this judicial district and is headquartered in this district.

21.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is headquartered in this district.

## PARTIES

22.    At all relevant times, Plaintiff Bernadette Dickerson was a resident of Montgomery, Alabama and was employed by Defendant as a CSR.  Defendant employed Plaintiff as a CSR from February 18, 2021 to June 2021.  Plaintiff signed a consent to join form to join this lawsuit, which is attached hereto as *Exhibit B*.

23.    At all relevant times, Plaintiff Roberta Armijo was a resident of Albuquerque, New Mexico, and was employed by Defendant as a CSR.  Defendant employed Plaintiff as a CSR from November 8, 2019 to September 17, 2020.  Plaintiff signed a consent to join form to join this lawsuit, which is attached hereto as *Exhibit C*.

24.    At all relevant times, Plaintiff Marlene Gutierrez was a resident of Albuquerque, New Mexico, and was employed by Defendant as a CSR.  Defendant employed Plaintiff as a CSR from approximately November 2019 to November 2020.  Plaintiff signed a consent to join form to join this lawsuit, which is attached hereto as *Exhibit D*.

25.    Defendant is a Texas corporation, doing business in New Mexico, but headquartered at 11845 Interstate 10 W, San Antonio, Texas 78230.

## GENERAL ALLEGATIONS

26.    Defendant employed Plaintiffs as CSRs in there brick and mortar call centers or from their home offices.  Defendant has employed them in these positions and promised to pay them at their regular hourly rates for all hours worked, which varied from $10-14 per hour.

27.     The uniform job descriptions for CSRs include: scheduling appointments for preventative health screenings, COVID-19 vaccinations, or other healthcare appointments; making outbound calls and taking inbound calls; and working with healthcare providers to assist with after-hours scheduling of appointments, arranging ground transportation to or from the hospital or pharmacy, or answering inquiries on benefit claims, appeals; providing 24/7 triage support and assigning priority for registered nurses to provide health advise; and other healthcare related tasks related tasks. *Exhibit A*.

28.     In order to perform their job duties, Plaintiffs required computers and a variety of essential and indispensable computer programs.  Throughout their employment with Defendant, Plaintiffs regularly worked off the clock as part of her job as a CSR.

29.     In order to perform her job, Plaintiffs were required to start-up and login to various computer programs, applications, and servers off the clock in order to access the information necessary to perform their job duties.

30.     At all relevant times, Defendant paid Plaintiffs and all other CSRs an hourly wage and classified them as nonexempt employees.

31.     The off the clock work activities performed by CSRs before every shift starting up and logging into computer programs were work activities that directly benefitted Defendant and were integral and indispensable to the CSRs' ability to perform their job duties.

32.     Similarly, the off the clock work tasks that the CSRs performed when returning from their lunch breaks starting up and logging back into computer programs directly benefitted Defendant and was integral and indispensable to the CSRs' ability to perform their job duties.

33.     Likewise, the off the clock work tasks that the CSRs performed  after clocking out, namely, shutting down and logging out of their computer programs, directly benefitted Defendant

were integral and indispensable to the CSRs' ability to perform their job duties.

34.     All CSRs used the same or similar essential computer programs, applications, and servers in performing their job duties.  These computer programs, applications, and servers are integral and indispensable part of the CSRs' work and they cannot perform their jobs without them.

35.     After powering up their computers, and before clocking in, Plaintiff and all other CSRs were required to open, load, and log into the following programs, applications, and servers: Microsoft Windows, Vidyo, Microsoft Outlook, Chatr, Softphone, Verint, and Ult. Pro.  These are examples of the programs, applications, and servers CSRs were required to access before clocking in and not an exhaustive list.

36.     On average, Defendant's CSRs spent 12-15 minutes working off the clock at the start of their scheduled shift opening, loading, and logging into computer systems.

37.     Similarly, CSRs spent an additional 3-4 minutes working off the clock to open, load, and log back into those computer systems after returning from lunch.

38.     At the end of the day, CSRs spent an additional 1-2 minutes logging out of computer systems after clocking out of Defendant's timekeeping system.

39.     Despite its ability to track the amount of time Plaintiff and other CSRs spend in connection with the pre-shift boot-up and login process, the mid-shift boot-up and log-in process, and the post-shift shutdown and logout process, Defendant failed to pay Plaintiffs and other CSRs for the off the clock work they performed each shift.

40.     Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

**Defendant Directed CSRs to Work Off the Clock and Directly Benefitted from the Off the Clock Work**

41.     At all relevant times, Defendant required and directly benefitted from the off the

clock work performed by Plaintiffs and all other CSRs in connection with the pre-, mid-, and post-shift activities described above.

42.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other CSRs.

43.     At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre-, mid-, and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other CSRs for the off the clock work they performed.

44.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the CSRs in order to pressure them into performing pre-, mid-, and post-shift work, off the clock.

45.     Defendant instructed CSRs to have all work applications and systems fully loaded before they clocked-in, so that they were prepared to take calls the moment they clocked-in.  The same policy applied when returning from unpaid lunch breaks.  Similarly, at the end of the shift, Defendant instructed CSRs to clock out before closing all work applications and systems to make certain they were clocked out at the moment they stopped taking calls.

46.     CSRs were subject to discipline if their "AUX time" was too high.  AUX time refers to time the CSRs spent clocked-in, but unavailable to take calls.  In order to reduce AUX time, Defendant instructed CSRs to perform the boot up and shutdown work described herein off the clock.

### Unlawful Deprivation of Wages from CSRs

47.     During the workweeks that Plaintiff and other CSRs did not work over forty hours (40) in a workweek, the outcome of Defendant's policies and practices is a depravation of straight

time wages – often referred to as a "gap time" claim.  As discussed below, gap time is compensable.

48.     Unpaid straight time wages (for Plaintiff's gap time claims and the New Mexico state law claims) related to the off the clock work described herein is owed to CSRs at the rate which they were typically paid for hours worked up to forty (40) hours in a workweek.

49.     During the workweeks that CSRs worked over forty hours (40) in a workweek, the outcome of Defendant's policies and practices is a depravation of overtime wages, which are compensable under the FLSA and applicable state wage and hour laws.

50.     Unpaid wages related to the off the clock work described herein is owed to CSRs at the FLSA mandated overtime premium of one and one-half their regular hourly rate in weeks they worked in excess of forty (40) hours in a workweek

51.     Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks the CSRs worked over forty hours and exactly which weeks they worked under forty hours.

**Plaintiff's Exemplary Workweeks**

52.     Defendant pays CSRs on a bi-weekly basis.  As an example of one particular workweek where Defendant failed to pay Plaintiff Dickerson overtime for hours worked in excess of 40 hours (as mandated by the FLSA), during the pay period of March 28, 2021 to April 10, 2021:

> ➤ Plaintiff was paid for 71.6 hours of regular time and 5.17 hours of overtime, meaning in one of the two weeks Defendant documented her working over 40 hours.  *See **Exhibit E**.*

> ➤ With pre-, mid -, and post-shift time of approximately 16 to 22 minutes per shift, Plaintiff should have been paid an additional approximately 80 to 110 minutes of overtime compensation for the particular workweek she worked over 40 hours.

> ➢ With pre-, mid-, and post-shift time of approximately 16 to 22 minutes per shift, Plaintiff Dickerson should have been paid an additional 80 to 110 minutes of regular rate compensation for the particular workweek she did not work over 40 hours.

## COLLECTIVE ACTION ALLEGATIONS

53.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All similarly situated current and former hourly CSRs who worked for Defendant in the United States, at any time during the last three years.*

(hereinafter referred to as the "putative collective members"). Plaintiffs reserve the right to amend this definition as necessary.

54.     Plaintiffs' FLSA claim should proceed as a collective action because Plaintiffs and putative collective members, having worked pursuant to common compensation policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

55.     Plaintiffs and putative collective members are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same unlawful practice, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

56.     The key legal issues are also the same for putative collective members, to wit: whether the off-the-clock time they spend in connection with performing pre-shift and lunch break activities is compensable under the FLSA.

57.     Plaintiffs estimate that the putative collective members, including both current and former employees over the relevant period, will include several hundred members. The precise number of putative collective members should be readily available from a review of Defendant's

personnel and payroll records.

## RULE 23 NEW MEXICO CLASS ACTION ALLEGATIONS

58.     Plaintiffs Armijo and Gutierrez bring this action pursuant to Fed R. Civ. P. 23(b)(2)

and (b)(3) on their own behalf and on behalf of:

> *All similarly situated current and former hourly CSRs who worked for Defendant*
> *in New Mexico at any time during the last three years.*

(hereinafter referred to as the "Rule 23 New Mexico Class").  Plaintiff reserves the right to amend

this definition as necessary.

59.     The members of the Rule 23 New Mexico Class are so numerous that joinder of all

Rule 23 New Mexico Class members in this case would be impractical.  Plaintiff reasonably

estimates that there are hundreds of Rule 23 New Mexico Class members.  Rule 23 New Mexico

Class members should be easy to identify from Defendant's computer systems and electronic

payroll and personnel records.

60.     There is a well-defined community of interest among Rule 23 New Mexico Class

members and common questions of law and fact predominate in this action over any questions

affecting individual members of the Rule 23 New Mexico Class.  These common legal and factual

questions include, but are not limited to, the following:

    a.  Whether the pre-shift time Rule 23 New Mexico Class members spend on start-
        up/log-in activities prior to "clocking in" for each shift is compensable time;

    b.  Whether the off the clock work performed by the Rule 23 New Mexico Class
        after returning from lunch is compensable;

    c.  Whether the off the clock work performed by the Rule 23 New Mexico Class
        after they clock out is compensable; and

    d.  Whether Rule 23 New Mexico Class members are owed wages for time spent
        performing pre-shift activities, and if so, the appropriate amount thereof.

61.     Plaintiffs' claims are typical of those of the Rule 23 New Mexico Class in that she

and all other Rule 23 New Mexico Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiffs' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 New Mexico Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 New Mexico Class members.

62.     Plaintiffs will fully and adequately protect the interests of the Rule 23 New Mexico Class and she has retained counsel who are qualified and experienced in the prosecution of New Mexico wage and hour class actions. Neither Plaintiffs nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 New Mexico Class.

63.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 New Mexico Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

64.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

65.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

66.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 New Mexico Class and declaratory relief is appropriate in this case with respect to the Rule 23 New Mexico Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

67.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All similarly situated current and former hourly CSRs who worked for Defendant in the United States, at any time during the last three years.*

(hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiffs reserve the right to amend this definition as necessary.

68.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical.  Plaintiffs reasonably estimate there are hundreds of Rule 23 Nationwide Class members.  Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

69.    There is a well-defined community of interest among Rule 23 Nationwide members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a.    Whether the pre-shift time that Rule 23 Nationwide Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

b.    Whether the time that Rule 23 Nationwide Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in is compensable time;

       c.     Whether the time that the Rule 23 Nationwide Class members spend on work activities after they clock out, such as logging out of computer systems and shutting down the computer is compensable time; and

       d.     Whether Defendant's failure to pay the Rule 23 Nationwide Class members for this pre-, mid- and post-shift time at their agreed upon rate constitutes a breach of contract and whether Defendant was unjustly enriched.

70.    Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

71.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

72.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

73.    This case will be manageable as a Rule 23 Class action. Plaintiffs and her counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer

and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

74.      Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

75.      Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### (FLSA Collective Action)
### VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.*

76.      Plaintiffs re-allege and incorporate all previous paragraphs herein and further alleges as follows.

77.      At all times relevant to this action, Defendant was Plaintiffs' employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

78.      Defendant engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

79.      At all times relevant to this action, Plaintiffs were an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

80.      Plaintiffs either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

81.      At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and

all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

82.     At all times relevant to this action, Defendant required Plaintiffs and all similarly situated current and former putative collective members to perform at least twelve (12) to fifteen (15) minutes of pre-shift start-up/log-in activities per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

83.     At all times relevant to this action, Defendant failed to compensate Plaintiffs and all similarly situated current and former putative collective members for at least three (3) to four (4) minutes of off-the-clock, unpaid work activities they performed during their lunch breaks.

84.     At all times relevant to this action, Defendant failed to compensate Plaintiffs and all similarly situated current and former putative collective members for at least one (1) to two (2) minutes of off-the-clock, unpaid work activities they performed after clocking out of Defendant's timekeeping system at the end of their shifts.

85.     The off-the-clock work performed by Plaintiff and all similarly situated putative collective members every shift is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

86.     In workweeks where Plaintiffs and other putative collective members worked 40 hours or more, the uncompensated off-the-clock time should have been paid at the federally mandated rate of 150% of each employee's regularly hourly wage. *See* 29 U.S.C. § 207.

87.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took CSRs to perform the off the clock pre-shift, mid-shift and post-shift work activities, and Defendant could have properly compensated Plaintiffs and the members of the Collective for the work they performed, but did not.

88.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 New Mexico Class Action)**
**VIOLATIONS OF THE NEW MEXICO MINIMUM WAGE ACT,**
**§§ 50-4-19, *et seq*. (on behalf of the New Mexico Class only)**

89.     Plaintiffs Armijo and Gutierrez re-allege and incorporate all previous paragraphs herein and further alleges as follows.

90.     The New Mexico Minimum Wage Act, N.M. Stat. Ann. §§ 50-4-19, *et seq*. provides that employees are entitled to minimum wages and overtime compensation calculated at time-and-a-half of their regular rate of pay for each hour worked each week in excess of forty (40). N.M. Stat. Ann. § 50-4-22

91.     A N.M. Stat. Ann. § 50-4-26 allows an employee who has not been paid in accordance with the New Mexico Minimum Wage Act to bring a civil action to recover all unpaid amounts, liquidated damages, interest, costs, and reasonable attorneys' fees.

92.     The New Mexico Minimum Wage Act entitles employees to compensation for every hour worked in a workweek. *See* N.M. Stat. Ann. §§ 50-4-19, *et seq*.; § 50-4-2.

93.     An employer in New Mexico must also designate regular pay days, not more than sixteen days apart, as days fixed for the payment of wages to all employees. N.M. Stat. Ann. § 50-4-2 (A).

94.     The employer must pay for all services rendered and due during these pay periods. *Id*. Furthermore, "an employer shall pay *wages in full*, less lawful deductions and less payroll deductions authorized by the employer and employee." N.M. Stat. Ann. § 50-4-2 (B).

95.     The New Mexico Minimum Wage Act also imposes record keeping requirements on employers.  Specifically, the Act provides that "[a]n employer shall provide an employee with a written receipt that identifies the employer and sets forth the employee's gross pay, the number of hours worked by the employee, the total wages and benefits earned by the employee and an itemized listing of all deductions withheld from the employee's gross pay." N.M. Stat. Ann. § 50-4-2 (B).

96.     New Mexico Minimum Wage Act also entitles employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of 40 hours per week *See* N.M. Stat. Ann. § 50-4-22.

97.     For any CSRs in New Mexico that Defendant discharged, any unpaid wages were due within five (5) days of discharge.  N.M. Stat. Ann. § 50-4-4 (A).  The wages of CSRs that quit were due the pay period after the employee quit.  N.M. Stat. Ann. § 50-4-4 (B); N.M. Stat. Ann. § 50-4-5. The New Mexico Minimum Wage Act permits an employee to recover any unpaid wages (including straight time) in a civil lawsuit. N.M. Stat. Ann. § 50-4-4 (C).

98.     N.M. Stat. Ann. § 50-4-26(C) states that "[i]n addition to penalties provided pursuant to this section, an employer who violates any provision of Section 50-4-22 NMSA 1978 shall be liable to the employees affected in the amount of their unpaid or underpaid minimum wages plus interest, and in an additional amount equal to twice the unpaid or underpaid wages."

99.     As used in N.M. Stat. Ann. § 50-4-26(C) the term "minimum wages" includes overtime wages. *See*, N.M. Stat. Ann. § 50-4-22(E).

100.     In failing to compensated the New Mexico Class for the pre-, mid-, and post-shift work activities and interruption of breaks discussed herein, Defendant violated the New Mexico state laws referenced above.

101.    As a result, the Rule 23 New Mexico Class have and will continue to suffer loss of income and other damages.  Accordingly, the Rule 23 New Mexico Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under New Mexico state laws at an amount to be proven at trial.

## COUNT III
### (Rule 23 Nationwide Class Action)
### BREACH OF CONTRACT

120.    Plaintiffs re-allege and incorporate all previous paragraphs herein and further alleges as follows.

121.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on Defendant's behalf.

122.    Defendant's contractual promises to pay Plaintiffs and each Rule 23 Nationwide Class member's applicable hourly rate is evidenced by, among other things each pay stub issued to Plaintiffs and the Rule 23 Nationwide Class members.

123.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, has an hourly rate of between $10.00 and $14.00 per hour.

124.    Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with pre-shift and meal period activities, described herein.

125.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the

agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

126.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Nationwide Class members spent doing pre-, mid-, and post-shift work activities, which is a fundamental part of an employer's job.

127.    Plaintiffs' and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

102.    As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and every other member of the Rule 23 Nationwide Class have been damaged in an amount to be determined at trial.

### COUNT IV
### (Rule 23 Nationwide Class Action)
### UNJUST ENRICHMENT

103.    Plaintiffs re-allege and incorporate all previous paragraphs herein and further alleges as follows.

104.    This Count is pled in the alternative to Count IV, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

105.    At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

106.    Plaintiffs and every other Rule 23 Nationwide Class member relied upon

Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

107.     By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

108.     Plaintiffs and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

109.     Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

110.     Upon information and belief, Defendant used the monies owed to Plaintiffs and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

111.     Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiffs and the Rule 23 Nationwide Class for the same.

112.     Plaintiffs and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

113.     As a direct and proximate result of Defendant's actions, Plaintiffs and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

///

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs, BERNADETTE DICKERSON, ROBERTA ARMJIO, and MARLENE GUTIERREZ, requests the following relief:

     a.     Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

     b.     Certifying this action as a class action (for the Rule 23 New Mexico Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claims (Count II);

     c.     Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' other state law claims (Counts III and IV);

     d.     Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all putative Collective action members and the Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

     e.     Designating Plaintiffs as the representatives of the FLSA Collective action, the Rule 23 New Mexico Class (Armijo and Gutierrez only), and the Rule 23 Nationwide Class, and undersigned counsel as Class/Collective counsel for the same;

     f.     Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

     g.     Declaring Defendant's violation of the FLSA was willful;

     h.     Declaring Defendant violated the NMMWA and that said violations were intentional, willfully oppressive, fraudulent and malicious;

     i.     Declaring Defendant breached its contracts with Plaintiffs and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

     j.     Declaring Defendant was unjustly enriched through their failure to pay Plaintiffs and the Rule 23 Nationwide Class for the off the clock work discussed herein;

k.      Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the Collective action members, the Rule 23 New Mexico Class, and the Rule 23 Nationwide Class, the full amount of damages, liquidated damages, and treble damages (where applicable) available by law;

l.      Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

m.      Awarding pre- and post-judgment interest to Plaintiff on these damages; and

n.      Awarding such other and further relief as this Court deems appropriate.

Respectfully Submitted,

Dated:  March 2, 2022

*/s/ Travis M. Hedgpeth*
Travis M. Hedgpeth
Texas Bar No. 24074386
The Hedgpeth Law Firm, PC
3050 Post Oak Blvd., Suite 510
Houston, Texas 77056
Telephone: (281) 572-0727
travis@hedgpethlaw.com

Jack Siegel
Siegel Law Group
Co-Attorney in Charge
Texas Bar No. 24070621
Siegel Law Group PLLC
4925 Greenville, Suite 600
Dallas, Texas 75206
214.790.4454
jack@siegellawgroup.biz

Kevin J. Stoops (*pro hac vice* forthcoming)
Charles R. Ash, IV (*pro hac vice* forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
kstoops@sommerspc.com
crash@sommerspc.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiffs, BERNADETTE DICKERSON, ROBERTA ARMIJO, and MARLENE GUTIERREZ, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demands trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Dated:  March 2, 2022

/s/ Travis M. Hedgpeth

Travis M. Hedgpeth
Texas Bar No. 24074386
The Hedgpeth Law Firm, PC
3050 Post Oak Blvd., Suite 510
Houston, Texas 77056
Telephone: (281) 572-0727
travis@hedgpethlaw.com

Jack Siegel
Siegel Law Group
Co-Attorney in Charge
Texas Bar No. 24070621
Siegel Law Group PLLC
4925 Greenville, Suite 600
Dallas, Texas 75206
214.790.4454
jack@siegellawgroup.biz

Kevin J. Stoops (*pro hac vice* forthcoming)
Charles R. Ash, IV (*pro hac vice* forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
kstoops@sommerspc.com
crash@sommerspc.com

*Attorneys for Plaintiff*